MARGARET WARD, PLAINTIFF IN ERROR, V. S. DEWIT BEALS ET AL., DEFENDANTS IN ERROR.

1. **Finding**: EVIDENCE. Case examined, and the findings of the court held to be in accordance with the evidence.

2. **Attorney.** The ordinary rule governing the authority of attorneys in the collection of debts, where no special direction is given, *Held*, Inapplicable.

3. **Evidence**: LETTERS: LETTER-PRESS COPIES. Letter-press copies of letters are but secondary evidence, and are not admissible against objection without first showing the loss of the originals or giving notice to produce them.

ERROR to the district court for Lancaster county. The action was one to foreclose a mortgage given by S. D. Beals to plaintiff in 1871. The defense was in substance that Beals had paid the note, which the mortgage was given to secure, to Robinson, attorney for Joseph Ward, the husband of plaintiff, and on trial below before POUND, J., defendant had judgment.

*Burr & Marshall,* for plaintiff in error.

*Charles O. Whedon, W. J. Lamb,* and *J. H. Foxworthy,* for defendants in error.

LAKE, CH. J.

On a careful examination of this record, we are entirely satisfied with the result reached in the district court. It is perfectly clear to our minds that the mortgage debt was paid, the note canceled and returned to the maker, and the mortgage handed over by Robinson to the purchaser of the lots, with the promise that it should be released. And in making the arrangements which he did with Beals, to raise the money by taking to himself a conveyance of the lots and disposing of them as he did, there is not a particle of doubt that Robinson was fully authorized by Joseph Ward, the late husband and duly authorized agent of the plaintiff.

Although executed nominally to the plaintiff, the note and mortgage in question were given by Beals for a debt due to said Joseph Ward for building a house for him in Lincoln. The security doubtless belonged in reality to Joseph Ward, for it seems that he never handed it over to his wife, who testified that she had never seen either the note or mortgage, nor even knew "they existed," until so informed by one of her attorneys in this suit, nearly eight years after the note had been paid off and returned to Mr.

Beals, the maker.    The evidence shows that Joseph Ward not only held and controlled this mortgage, but also that he placed it in the hands of Seth Robinson, then an attorney practicing at the Lincoln bar, for collection, or rather to realize the money due upon it.

That Joseph Ward was authorized to deal with the mortgage as he saw fit, is conceded.    Mrs. Ward herself testified that her husband "was authorized to do any business" she had to do.    If she "had any business in Lincoln, Mr. Ward would be the person to do it for me.    If I had any money to receive in Lincoln, he would be the person to receive it for me.    Anything he did, or promised to do, in my name, was quite right.    *    *    *    If my husband was paid the amount of this note and mortgage, it would be all right."

This mortgage was given in March, 1871, to secure a note for $464.69, due in one year, with twelve per cent interest.    Very soon after the note matured, it is shown to have been in the hands of Mr. Robinson, Mr. Ward's attorney, for collection.    It is shown too, by the letters of Ward to Robinson, that a speedy collection, or realization of the money by a sale of the security, was desired.    Ward evidently was greatly in need of money, judging from the tone of his letters about this time.    Referring to the claims in Robinson's hands, in a letter under date of July 18th, 1872, Ward says to his attorney:    "Yours of the 12th on hand.    I am very much in want of funds, and *you must sell.*    I presume your meaning is to have interest to or near the time of sale; at all events, do for me to the best in your power."    Referring particularly to the Beals mortgage, he says:    "I think, however, that Mr. Beals is acting anything but as a gentleman.    I did not expect this treatment from him; when I built his house it was quite contrary to my wish, and had to deprive my family of needful conveniences in order to meet payments for his house.    Remit me the amount as early as possible."

Again, under date of August 1st, of the same year, in a letter to Robinson, Ward says: "It is two weeks since I wrote to you in reply to yours of July 12th. In my letter, I told you to sell the mortgage and judgment. I certainly expected the money ere this. From the contents of your letter, that the money was on hand, and would wait ten days, I took it for granted that there would be no more delay, and therefore made distinct arrangements for using the money. On Saturday evening I sent you a telegram asking *when you would send the money for the sale of mortgages?* This is the fifth day, and yet no reply either by telegram or letter. Now, friend Robinson, I want to *hear from you.* If you have sold, I want you to send me the money at your very earliest opportunity, if not already sent."

And again, under date of Sept. 11th, 1872, Ward writes to Robinson: "Your letter of August 8th states that in ten days the cash will be paid for the Butler and Beals sale, and that I may count on it in twenty days, and make my arrangements accordingly." * * * "I did expect the balance this morning. If not sent, please write me on receipt." * * * "I have made arrangements, as you instructed me, and hope I may not be disappointed."

From these letters, it is seen that Ward had been assured by Robinson that the Beals and Butler claims had been so disposed of that he could rely upon having the "money in twenty days" from the 8th of August, 1872. On the 14th of September, 1872, Ward again writes to Robinson, acknowledging the receipt of a draft from him for "$995.85, less exchange." In this letter, no allusion is made to the Beals matter, but only to "the McElheny mortgage," then in the hands of his attorney, and some notes which had, it seems, been taken on a sale of some of the claims, some of which he supposed were then "due, and the balance in November."

A very fortunate and valuable coincidence—Ward and

Robinson, the chief actors in this business, both being dead—is found between the letter of Robinson to Ward, written on the 8th of August, and the one to Beals of the same date. In the one to Ward he informs him of the sale of the mortgage, and that he could " count on " getting the money in twenty days, and in that to Beals, he says: " Pay Ward's note and mortgage to none but me, I am the holder in trust for other parties." Evidently the parties here referred to were the ones to whom he had negotiated the security, and from whom he was to obtain the money which he told Ward he could "count on" having "in twenty days."

Thus from Ward's letter above we gather abundant evidence that Robinson, in making the negotiations which resulted in the cancellation and surrender of the note to Beals, and his promise to Hartley that the mortgage should be released of record, did not go beyond the scope of his authority. Our minds are perfectly satisfied on this point, without reference to any of the copies of letters from Robinson to Ward, which is claimed were erroneously admitted in evidence. This disposes of the claim that " the findings and judgment of the court are not sustained by the evidence;" for it is not questioned that Robinson did cancel and surrender the note, and agreed that the mortgage should be released. The ordinary rule governing the authority of attorneys in the collection of debts, where no special direction is given as to the mode, evidently is inapplicable here.

Considerable time was devoted in argument to the question of whether Ward ever actually received the money from Robinson on this claim. As we view the case it is wholly immaterial whether he did or not. His attorney was authorized either to collect the amount from Beals, or to raise the money by a sale of the security. And that Robinson accounted for the proceeds is, to our minds, made clear by the fact that Ward, although writing to Robin-

son frequently, and being himself in Lincoln frequently, even as late· as January, 1879, never after his letter to Robinson of September 11th, 1872, before referred to, made any allusion whatever to the Beals claim. In view of Ward's urgent appeals for money in this and his preceding letters, in which he referred particularly to the Beals mortgage, this silence respecting it can be accounted for upon no other reasonable hypothesis than that of his having realized upon it to his full satisfaction.

The letter-press copies purporting to be of letters written by Robinson to Ward ought to have been excluded. They were, as we held in *Delaney v. Erickson*, 10 Neb., 492, but secondary evidence, and could not be resorted to, against objection, without first showing the loss of the originals, or giving notice to produce them, neither of which steps was taken. However, we do not think the judgment should be reversed for this error. The only fact which the defendants relied on, not fully established without their aid, is that of the actual payment of the money realized from this claim to Ward. In the one of September 10th, inclosing the draft for the $995.85, before referred to, Robinson says to Ward: "This makes us square, the McElhinny mortgages still in my hands, but I think I shall sell soon to eastern friends, as I did the others." But, as we have said, this fact is not indispensable to the defense, which we think is fully made out by simply showing that Robinson was authorized to raise the money by a sale or negotiation of the security, and that he did so. On the whole, we discover no error calling for a reversal of the judgment, and it must be affirmed.

JUDGMENT AFFIRMED.